# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS E. WOODS,     : | |
|    **Plaintiff**     : | |
| : | No. 1:23-cv-2029 |
|    v.     : | |
| : | (Judge Rambo) |
| GEORGE RALSTON, *et al.*,     : | |
|    **Defendants**     : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 in which *pro se* Plaintiff Thomas E. Woods ("Woods") alleges violations of his civil rights by various employees of Huntingdon State Correctional Institution ("SCI-Huntingdon") and Rockview State Correctional Institution ("SCI-Rockview") who are purportedly engaged in a conspiracy to violate his rights. Following the court's dismissal of Woods's original complaint, the case is presently proceeding on Woods's amended complaint. In accordance with the Prison Litigation Reform Act ("PLRA"), the court has conducted an initial review of Woods's amended complaint. For the reasons set forth below, the court will dismiss the complaint without further leave to amend except to the extent that it states a claim for deliberate indifference to a substantial risk of serious harm against Defendants Jenkins, Ralston, and Price.

I.     **BACKGROUND**

Woods filed this case on November 21, 2023, and the court received and docketed his original complaint on December 7, 2023.  (Doc. No. 1.)  The court dismissed the complaint without prejudice for failure to state a claim upon which relief may be granted on January 30, 2024, and granted Woods leave to file an amended complaint.  (Doc. Nos. 10-11.)  After obtaining two extensions of time, Woods timely filed his amended complaint on April 29, 2024, and the court received and docketed the amended complaint on May 16, 2024.  (Doc. No. 16.)

The amended complaint asserts civil rights claims against forty defendants who are purportedly engaged in an ongoing conspiracy committed under a "Buddy-Buddy-System."  (*Id.* at 1-2.)[1]  The complaint alleges generally that: (1) Woods received inadequate medical care to treat an injury he suffered to his Achilles tendon in 2018; (2) various conditions of his confinement in SCI-Huntingdon between 2018 and October 2021 violated his constitutional rights; (3) he received inadequate medical care following a surgery for the Achilles injury on

---

[1] In accordance with the legal standard set forth below, the court accepts the allegations in the complaint as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017).  Mere conclusory statements, however, are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  In addition, *pro se* documents are "to be liberally construed."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

November 8, 2021; (4) the conditions of his confinement between November 8, 2021 and December 14, 2021 violated his constitutional rights; and (5) following his transfer to SCI-Rockview on December 14, 2021, the conditions of his confinement violated his constitutional rights.  (*See generally id.*)

## II.    LEGAL STANDARDS

### A.    Screening Standard

Pursuant to 28 U.S.C. § 1915A, district courts are required to review complaints in civil actions in which prisoners seek redress from governmental entities or officers or employees of governmental entities.  28 U.S.C. § 1915A(a).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  *Id.* § 1915A(b).  In screening complaints, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  *Iqbal*, 556 U.S. at 678.

When evaluating the plausibility of a complaint, the court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may

be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Additionally, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* "is to be liberally construed." *Estelle*, 429 U.S. at 106. A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Section 1983 Civil Rights Claims

Woods has filed his complaint pursuant to Section 1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."

*Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005.  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*

### III. TIMELINESS

As a threshold matter before discussing the merits of Woods's amended complaint, the court will address the issue of timeliness.  Although the running of a statute of limitations is an affirmative defense that ordinarily must be pleaded and proven by defendants, district courts may dismiss claims as time barred pursuant to the screening provisions of 28 U.S.C. § 1915 if the untimeliness is clear from the face of the complaint.  *See, e.g., Feingold v. Brooks*, 791 F. App'x 325, 326 (3d Cir. 2020).

Section 1983 claims alleging civil rights violations that occurred in Pennsylvania are subject to Pennsylvania's two-year statute of limitations for personal injury actions.  *Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024).  Under the continuing violations doctrine, claims that occurred outside of this two-year limitations period may be deemed timely if they are part of a continuing practice that continued into the limitations period.  *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019).  Under the continuing violations doctrine, "so long as the last act in the continuing practice falls within the limitations period[,] the court will grant relief for the earlier related acts that would otherwise be time barred."

*Id.* (cleaned up) (citing *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001)).

In this case, Woods filed his original complaint on November 21, 2023.[2] (Doc. No. 1.) Thus, any claims based on conduct that occurred before November 21, 2021 are untimely unless they can be deemed timely under the continuing violations doctrine.

Having reviewed the factual allegations in the amended complaint, the court will dismiss all claims arising from facts that occurred prior to November 8, 2021 as untimely. Woods asserts various medical care and conditions of confinement claims occurring before that date, but he does not provide any factual connection between those facts and facts that occurred within the limitations period beyond conclusory assertions that they all arose from the "Buddy-Buddy-System." This is not sufficient to establish that they are part of a continuing practice such that they can be deemed timely under the continuing violations doctrine.

As for the claims based on facts that occurred between November 8, 2021, and November 21, 2021, the court finds that these claims are timely pursuant to the continuing violations doctrine. Woods alleges that he was given surgery for his Achilles heel injury on November 8, 2021, and that he received deficient medical

---

[2] The complaint is deemed filed on the date it was submitted to prison officials for mailing pursuant to the prisoner mailbox rule. *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011).

care immediately following the surgery, which continued into the limitations period. The court accordingly will not dismiss these claims as untimely because the court liberally construes the allegations to establish a continuing pattern of conduct beginning with the surgery on November 8, 2021, and continuing into the limitations period.

The court will additionally dismiss as untimely all claims arising from facts that occurred after December 14, 2021. In Woods's original complaint, he did not allege any facts that occurred after that date. (*See generally* Doc. No. 1.) The facts that he now alleges occurred between December 14, 2021 and January 4, 2022 were not included in this case until he filed his amended complaint on April 29, 2024.[3] (*See* Doc. No. 16.) Thus, because the claims are facially outside the limitations period for a complaint filed on April 29, 2024, they can only be considered timely if they relate back to the claims asserted in the original complaint pursuant to Federal Rule of Civil Procedure 15(c).

Rule 15(c) allows a claim raised in an amended complaint to be treated as if it were filed on the date of the original complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see*

---

[3] As noted above, the amended complaint is deemed filed on the date Woods submitted it for mailing pursuant to the prisoner mailbox rule. *See Pabon*, 654 F.3d at 391 n.8.

*also SEPTA v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344-45 (3d Cir. 2021).[4] "Where an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality." *Glover v. FDIC*, 698 F.3d 139, 145 (3d Cir. 2012). The relation back doctrine balances "the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010).

The "touchstone" of whether claims are sufficiently related for purposes of the relation back doctrine is "fair notice," because the doctrine is "premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover*, 698 F.3d at 145 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). Relation back is accordingly only allowed if the opposing party has been given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds." *Id.* (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)). Amended claims "that

---

[4] Rule 15(c) allows a claim raised in an amended complaint to relate back to the original complaint in two other situations, neither of which is relevant to the instant analysis. *See* Fed. R. Civ. P. 15(c).

restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." *Bensel*, 387 F.3d at 310. On the other hand, "amendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously.'" *Glover*, 698 F.3d at 145 (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)). Where the original complaint did not give the defendant fair notice of the claim that the plaintiff attempts to bring in the amended complaint and the grounds upon which the claim rests, relation back is not appropriate. *Id.*

    The court finds that the claims based on facts that occurred between December 14, 2021 and January 4, 2022 do not relate back to the claims that were asserted in the original complaint. The amended complaint alleges that Woods was transferred from SCI-Huntingdon to SCI-Rockview on December 14, 2021 and that the conditions of his confinement and various other aspects of his incarceration in SCI-Rockview following the transfer violated his constitutional rights. (*See* Doc. No. 16 at 59-65.) The amended complaint does not allege any factual connection between these allegations and the facts that occurred in SCI-Huntingdon prior to the transfer other than conclusory assertions that the transfer was caused by the "Buddy-Buddy-System." (*Id.* at 59, 64-65.) Accordingly, because the claims asserted in the amended complaint that are based on facts

9

occurring after December 14, 2021 do not arise from the same "conduct, transaction, or occurrence" as the claims asserted in the original complaint, relation back is inappropriate. Fed. R. Civ. P. 15(c)(1)(B). The court will dismiss these claims as untimely. The court's analysis accordingly proceeds to the merits of Woods's amended complaint only as to the alleged facts that occurred between his surgery on November 8, 2021 and his transfer between prisons on December 14, 2021. (*See* Doc. 16 at 45-59.) The court will briefly summarize these factual allegations in the next section.

## IV.   REMAINING FACTUAL ALLEGATIONS

In the relevant portion of the amended complaint, Woods alleges that the surgery was performed on November 8, 2021, after which he was placed in a cast from his knee down and given crutches. (*Id.* at 45.) The complaint alleges that after his surgery, he was placed in an "extremely squalid" cell that did not have a desk or shelves and had a broken sink that leaked water on the floor. (*Id.*) Woods was then allegedly transferred, on November 24, 2021, to a cell that was at the back of a housing block, necessitating a walk of approximately "two city streets or a football field" when he needed to a get a food tray or other items. (*Id.*)

The amended complaint alleges that on November 27, 2021, Woods exacerbated his Achilles injury in an unspecified manner while walking from his cell. (*Id.* at 47-48.) Defendant Talasky allegedly gave Woods Tylenol for the pain

he was experiencing, despite being aware that Tylenol had not relieved pain he had experienced in the past. (*Id.* at 48.) Woods was transferred to a different cell closer to the front of the housing block on November 29, 2021. (*Id.* at 49.) The amended complaint alleges that Wood had not been given a shower in eight days at this point and that he requested the use of a "medical support" shower. (*Id.*) Defendants allegedly denied his request. (*Id.* at 49-51.) The amended complaint avers that Woods subsequently fell while using the prison's standard shower facilities, causing him to hit his head and lose consciousness and suffer bruising on his head, neck, and back. (*Id.* at 51-52.)

On December 1, 2021, Woods was allegedly placed in a "behavioral modified" cell as punishment for filing grievances against prison officials. (*Id.* at 52-53.) The walls of the cell were allegedly smeared with human feces. (*Id.* at 53.) Woods's crutches were allegedly taken away from him before he moved into this cell, causing him to have to crawl and hop around the cell. (*Id.*) Defendant Price and other correctional officers and medical professionals purportedly observed this and laughed at Woods. (*Id.*) Although the amended complaint does not specify how long Woods was in the "behavioral modified" cell, it appears from context that he was moved out of the cell on the same day he was placed there, December 1, 2021. (*See id.* at 54 (noting that a response to grievance Woods filed regarding the conditions of his confinement in the cell he was subsequently moved

11

to addressed the conditions of the cell on December 1, 2021).)  Woods was subsequently moved out of this cell by Defendant Harris and back to the cell at the rear of the housing block where he was previously placed.  (*Id.*)  Woods attempted to file a grievance against Harris for his cell placement.  (*Id.* at 54.)  Harris purportedly read the grievance and then retaliated against Woods for filing it by fabricating a report of misconduct by Woods.  (*Id.*)

On November 29, 2021, Woods placed a sick call request to be seen by the prison's medical department for pain that he was experiencing from his Achilles injury and the injuries he suffered from the fall in the shower.  (*Id.* at 54-55.)  Defendant Price and the prison's medical staff were allegedly aware that Woods was in pain but refused to see him for six days.  (*Id.* at 55.)  Following this six-day delay, Woods was seen for a sick call on December 6, 2021, by Defendant Talasky, who allegedly refused to remove sutures from Woods's surgery, despite the fact that the surgeon who performed the surgery had directed that the sutures should be removed two weeks after the surgery.  (*Id.* at 55-56.)  Woods was then taken to see the surgeon the next day, on December 7, 2021, who removed his cast and sutures.  (*Id.* at 56.)  The surgeon determined that Woods may have exacerbated his Achilles injury.  (*Id.*)  On December 8, 2021, Defendants Ralston and Tess allegedly fabricated a misconduct report against Woods after he was returned to the prison from his appointment with the surgeon.  (*Id.*)

Woods attended sick call again on December 9, 2021, at which point Defendant Nalley prescribed him Tylenol and "another medication," despite allegedly being "fully aware" that these medications "would not work" because they had not helped Woods in the past. (*Id.*)

V.   **DISCUSSION**

   A.   **Merits**

The court liberally construes the amended complaint as asserting six claims based on the events that occurred between November 8, 2021 and December 14, 2021: (1) that Defendants were deliberately indifferent to Woods's serious medical needs when they provided inadequate medical care following his surgery; (2) that Woods's placement in various cells violated his constitutional rights; (3) that Defendants were deliberately indifferent to a serious risk of harm when they compelled him to shower without the use of a "medical support" shower and he subsequently fell in the shower; (4) that Defendants fabricated misconduct reports against Woods; (5) that Defendants' actions constituted retaliation for Woods filing grievances; and (6) that Defendants were engaged in a civil conspiracy. (*See* Doc. 16 at 45-59.)

Woods's retaliation and conspiracy claims plainly fail. To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory

13

action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more defendants to do an unlawful act; (2) an overt act in furtherance of the agreement; and (3) actual damages to the plaintiff. *Kline v. Security Guards, Inc.*, 386 F.3d 246, 262 (3d Cir. 2004). Here, the only allegations of causation to support a retaliation claim and the only allegations of an agreement to support a conspiracy claim are Woods's conclusory assertions that the Defendants were engaged in a "Buddy-Buddy-System." These conclusory allegations are not entitled to the assumption of truth and are not sufficient to state retaliation and conspiracy claims upon which relief may be granted.

Woods's deliberate indifference to a serious medical need claim will also be dismissed. To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). In this case, Woods's general allegations that he was in pain are not sufficient to allege a serious medical need. *See, e.g., White v. Harry*, No. 1:23-cv-01336, 2024 WL 198896, at *3 (M.D. Pa.

14

Jan. 18, 2024) (finding that "bare assertion" that plaintiff suffered pain and superficial bruising was not sufficient to allege serious medical need and collecting other cases supporting that point). Moreover, even assuming that Woods alleges a serious medical need, he has not alleged any actions by Defendants that would amount to deliberate indifference to that need. The amended complaint makes clear that Woods received medical care for his pain throughout the relevant period; his assertion of deliberate indifference appears to be nothing more than a disagreement as to what treatment he should have been provided, which is not sufficient to allege deliberate indifference. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

    The court will likewise dismiss Woods's claims that his placement in various cells amounted to unconstitutional conditions of confinement. To state an Eighth Amendment conditions of confinement claim, a plaintiff must allege that: (1) he suffered a "sufficiently serious" deprivation; and (2) the defendants had a sufficiently culpable state of mind. *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)). The first element requires allegations that the plaintiff was denied "the minimal civilized measures of life's necessities." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). The second element is subjective and requires allegations that defendants

were deliberately indifferent to a substantial risk of serious harm to the plaintiff's health or safety. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Here, Woods alleges that his placement in various cells in the prison violated his constitutional rights, but inmates do not have a constitutional right to placement in any particular cell, *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995), and Woods's allegations that one cell had a leaky toilet and that another cell was far away from where he had to walk to get food do not constitute denials of the "minimal civilized measures of life's necessities." *Clark*, 55 F.4th at 179. Although Woods's allegation that he was housed in a cell where human feces was smeared on the wall may be sufficient to support a conditions of confinement claim, (*see* Doc. No. 16 at 53), it appears from the complaint that Woods was housed in this cell for less than one full day and did not spend any nights sleeping in the cell. This transitory exposure to the adverse conditions of the cell is not sufficient to state a conditions of confinement claim upon which relief may be granted.

Finally, Woods's claims of falsified misconduct reports will be dismissed. Woods does not allege that the allegedly falsified misconduct reports resulted in any disciplinary sanctions or any other adverse consequences against him, and "mere allegations of falsified evidence or misconduct reports, without more, are

not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002).

The only claim that the court will allow to proceed is Wood's claim that prison officials were deliberately indifferent to a substantial risk of serious harm when they compelled him to use a shower lacking "medical support" after his surgery and that he subsequently fell while in the shower. This claim sounds in deliberate indifference to a substantial risk of serious harm, which requires allegations that: (1) the plaintiff was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that risk; and (3) the defendant's deliberate indifference caused him harm. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Farmer*, 511 U.S. at 833), *abrogated in nonrelevant part as recognized by Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Here, Woods alleges that: (1) Defendants were aware that Woods required the use of crutches following his surgery; (2) that they compelled him to shower in a non-accessible shower without the use of crutches; (3) that he fell while using the shower; and (4) that he suffered physical injuries from the fall. The court finds these allegations sufficient to state a deliberate indifference claim upon which relief may be granted.

The only defendants who were allegedly personally involved in this deliberate indifference claim are Defendants Jenkins, Ralston, and Price. No other

Defendants are alleged to have compelled Woods to shower in a non-accessible shower or to have directed others to compel Woods to do so.  Accordingly, the claim will only be allowed to proceed with respect to Defendants Jenkins, Ralston, and Price.

### B.    Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a court dismisses a claim that is merely deficient. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*  The court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

The court will deny leave to amend as futile with respect to the dismissed claims. Woods has had multiple opportunities to state a claim upon which relief may be granted but has failed to do so with respect to these claims. *See Foman*, 371 U.S. at 182 (noting that leave to amend may be denied based on a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed").

## VI. CONCLUSION

The court will dismiss the amended complaint without further leave to amend except to the extent that Woods alleges deliberate indifference to a substantial risk of serious harm by Defendants Jenkins, Ralston, and Price. The court will direct service of process on Jenkins, Ralston, and Price. An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: June 3, 2024